## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 15, 2009**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No.** |
| | : | |
| **v.** | : | |
| | : | **Violations:** |
| **NATHAN ANTOINE PEAKE and** | : | **26 U.S.C. § 7212(a) (Corruptly** |
| **GREGORY LYNN MCCORMICK** | : | **Endeavoring to Impede the IRS);** |
| | : | **26 U.S.C. § 7206(2) (Aiding and** |
| **Defendants.** | : | **Assisting Preparation and Presentment** |
| | : | **False Corporate Income Tax Return);** |
| | : | **26 U.S.C. § 7201 (U.S. Income Tax** |
| | : | **Evasion); 47 D.C. Code § 4101(a)** |
| | : | **(D.C. Income Tax Evasion);** |
| | : | **18 U.S.C. § 371 (Conspiracy to** |
| | : | **Commit Bank and Wire Fraud);** |
| | : | **18 U.S.C. § 1344 (Bank Fraud);** |
| | : | **18 U.S.C. § 1343 (Wire Fraud);** |
| | : | **18 U.S.C. § 1028A (Aggravated** |
| | : | **Identity Theft);18 U.S.C. § 2 (Aiding** |
| | : | **and Abetting and Causing an Act to be** |
| | : | **Done); 18 U.S.C. § 1503 (Obstruction** |
| | : | **of Justice); 18 U.S.C. § 982 (a)(2)(A)** |
| | : | **(Forfeiture Allegation).** |

### INDICTMENT

The Grand Jury charges:

At all times relevant to the Indictment:

### Introductory Allegations

1.      The defendant, **NATHAN ANTOINE PEAKE** ("defendant PEAKE"), a citizen of the

United States and a resident of the State of Maryland, managed professional athletes.

2.      Since in or about 1988, the defendant, **GREGORY LYNN MCCORMICK** ("defendant

MCCORMICK"), worked as an accountant with the United States Department of Commerce,

assigned to the Bureau of Economic Analysis.

3.      Defendant MCCORMICK assisted defendant PEAKE with his personal and business

financial affairs.

## COUNT ONE
### Corruptly Obstructing, Impeding, and Impairing the
### Due Administration of the Internal Revenue Laws

### Background

4.      On or about June 25, 1999, defendant PEAKE formed a corporation in the District of

Columbia to manage professional athletes.  This corporation was originally named N & N

Management.  On or about September 15, 1999, defendant PEAKE caused its name to be

changed to Center Court Management.  On or about April 11, 2001, defendant PEAKE caused its

name to be changed to Peake Management Group, Inc. ("PMG, Inc.").

5.      Defendant PEAKE, through PMG, Inc., primarily represented professional basketball

players who played for teams in the National Basketball Association ("NBA").  These NBA

players agreed to pay monthly management fees for financial management, personal and public

relations services.  Financial management services included coordinating the players' personal

bill paying, acting as liaison with tax and investment firms, and providing advice regarding any

business, commercial or real estate investments.  In addition to the monthly management fees,

these players agreed to pay PMG, Inc. 20% of any sponsorship, endorsement or public relations

compensation earned.

6.      PMG, Inc. shared office space with a registered NBA agent (hereinafter referred to as

"AGENT"), who negotiated the contracts with the players' NBA teams.  These players paid

AGENT an annual agent fee based upon a percentage of their compensation for each playing

2

season.  Unbeknownst to these players, AGENT paid over a large percentage of the agent fees he earned to defendant PEAKE.

7.      Defendant PEAKE also managed professional boxers.  As is customary in the boxing industry, these boxers paid defendant PEAKE a percentage of their gross earnings from each fight, known as a purse.

8.      From on or about April 15, 1998 through on or about April 15, 2008, in the District of Columbia and elsewhere, defendant PEAKE corruptly obstructed and impeded, and endeavored to obstruct and impede, the due administration of the internal revenue laws through various means, by committing, among others, the following:

        a.      On or about July 15, 1999, defendant PEAKE submitted an Election by a Small Business Corporation (Form 2553) with the Internal Revenue Service ("IRS"), seeking that N & N Management be treated as a sub-chapter S corporation (hereinafter referred to as "S corporation") for tax purposes.  To qualify for S corporation status, the entity must, among other things, be a domestic corporation and its shareholders may not include other corporations.  Annually, S corporations must file a U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) with the IRS.  S corporations are not required to pay taxes.  Instead, any income or losses realized by an S corporation flow through to its shareholders, who are required to report the flow-through income or losses on their U.S. Individual Income Tax Returns (Forms 1040) and pay any taxes due and owing.  S corporations are also required to notify the IRS of any income or losses realized by the corporation's shareholders by filing a Schedule K-1 for each shareholder.

        b.      Originally, defendant PEAKE owned 80% of PMG, Inc.'s shares and one of the

3

athletes defendant PEAKE managed (hereinafter referred to as "ATHLETE A") owned the remaining 20%. On or about March 1, 2000, PMG Inc.'s ownership changed when another individual (hereinafter referred to as "INVESTOR") made a $250,000 capital contribution to the corporation. At this time, PMG, Inc.'s ownership was as follows: PEAKE owned 66.7%; INVESTOR owned 25.8% and ATHLETE A owned 7.5%. The following year, however, defendant PEAKE became PMG. Inc.'s sole shareholder, owning 100% of the shares.

  c.  On or about May 20, 1999, defendant PEAKE opened a commercial bank account at Branch Banking & Trust (hereinafter referred to as "BB&T") in the name of N & N Management. Defendant PEAKE was the only authorized signatory on the account. Subsequently, on or about April 20, 2001, the account's name was changed to PMG, Inc.

  d.  From on or about February 7, 2000 to on or about December 31, 2007, defendant PEAKE did not deposit all the management fees he was paid into PMG Inc.'s account. Instead, defendant PEAKE diverted or caused to be diverted approximately $4,797,776 into personal bank accounts or nominee commercial bank accounts he had opened in a name other than PMG, Inc. As a result of these diversions, these management fees were not captured on PMG, Inc.'s books and records.

  e.  From on or about February 11, 2003 to on or about March 14, 2007, defendant PEAKE diverted a large portion of the fees he was paid by AGENT. Instead of depositing all the receipts into PMG, Inc.'s account, defendant PEAKE diverted or caused to be diverted approximately $1,039,164 into his personal bank accounts or nominee commercial bank accounts he had opened in a name other than PMG, Inc. As a result of these diversions, these agent fees were not captured on PMG, Inc.'s books and records.

f.      From on or about November 26, 2001 to on or about November 13, 2006, defendant PEAKE caused materially false U.S. Corporate Income Tax Returns for an S Corporation (Forms 1120S) for PMG, Inc. to be filed with the IRS for the calendar years 2000, 2001, 2002, 2003, 2004 and 2005.  These returns were materially false in that:

(i)      the diverted management and agent fees were not reported as gross receipts, resulting in a total understatement of income for these years in the approximate amount of $3,750,063 and

(ii)     the Schedules K-1 attached to these Forms 1120S understated the amount of income realized by PMG, Inc.'s shareholders for these years.

g.      From on or about December 13, 2004 to on or about November 13, 2006, defendant PEAKE caused materially false U.S. Corporate Income Tax Returns for an S Corporation (Forms 1120S) for PMG, Inc. to be filed with the IRS for the calendar years 2002, 2003, 2004 and 2005 because they replaced defendant PEAKE as PMG, Inc.'s sole shareholder with a nominee entity called Peake Enterprises.

h.      From on or about September 15, 2007 through on or about September 15, 2008, defendant PEAKE failed to file U.S. Corporate Income Tax Returns for an S Corporation (Forms 1120S) for PMG, Inc. with the IRS, as required by law, for the calendar years 2006 and 2007.  As a result, he failed to notify the IRS that PMG, Inc. earned approximately $2,286,688 in management and agent fees for these two years.  Defendant PEAKE also failed to file Schedules K-1 with the IRS for these years, identifying the amount of income or losses he realized as PMG, Inc.'s sole shareholder.

i.      On or about September 30, 1999, defendant PEAKE and ATHLETE A opened a

5

commercial line of credit with BB&T (hereinafter referred to as "First LOC").   The First LOC
was for $75,000.  By on or about May 7, 2002, the First LOC was increased to $2,500,000.
Beginning on or about May 24, 2000, BB&T required ATHLETE A to pledge securities he
owned as collateral for the loan.

  j.  From on or about October 1, 1999 to on or about September 30, 2003, defendant
PEAKE caused approximately $2,497,344 to be drawn from the First LOC.  At defendant
PEAKE's direction, approximately $545,000 was deposited into his personal bank accounts,
$18,000 into his mother's bank account, $480,000 into a commercial accounts controlled by
defendant PEAKE in the name of Peake Construction (hereinafter referred to as "PC #4348"),
and $1,390,000 into another commercial account controlled by defendant PEAKE in the name of
Peake Construction (hereinafter referred to as "PC #9734").  Only $23,344 was deposited from
the First LOC into PMG Inc.'s account.  No First LOC proceeds were transferred to ATHLETE
A.

  k.  On or about November 18, 2003, when defendant PEAKE and ATHLETE A
sought to increase the First LOC to $3,500,000, BB&T refused to enter into a loan agreement
with defendant PEAKE.  Instead, BB&T rolled the outstanding balance of the First LOC into a
new loan and entered into an agreement with ATHLETE A for $3,500,000 (hereinafter referred
to as "Second LOC").  Thus, ATHLETE A was the only party obligated to pay the accruing
interest and balance of the Second LOC.

  l.  From on or about December 9, 2003 to on or about October 8, 2004, defendant
PEAKE caused approximately $880,000 to be drawn from the Second LOC.  At defendant
PEAKE's direction, $622,500 was deposited into his personal bank accounts and $197,500 into

PC #4348. Only $25,000 was deposited from the Second LOC into PMG Inc.'s account. No Second LOC proceeds were transferred to ATHLETE A.

      m.     Defendant PEAKE never made any payments to reduce the balance of either the First LOC or Second LOC. On or about February 25, 2008, ATHLETE A paid approximately $2,466,999 to BB&T to close the Second LOC.

      n.     Beginning on or about September 8, 2000 through on or about December 1, 2007, defendant PEAKE paid or caused himself to be paid approximately $1,392,000 in checks or wire transfers from PC #4348, PC #9734 and another commercial bank account defendant PEAKE controlled in the name of Peake Enterprises (hereinafter referred to as "PE #6465").

      o.     Beginning on or about February 16, 2001 through on or about December 1, 2007, defendant PEAKE paid or caused his wife to be paid approximately $278,000 in checks or wire transfers from PC #4348, PC #9734 and PE #6465.

      p.     In addition to the check and wire transfer payments to himself, defendant PEAKE paid or caused himself to be paid in U.S. currency. From on or about January 4, 2002 to on or about October 17, 2006, defendant PEAKE caused the withdrawal of approximately $1,147,300 in U.S. currency from PC #4348 and PE #6465. At defendant PEAKE's direction, these withdrawals were consistently made in amounts below $10,000. As such, BB&T did not file Currency Transaction Reports with the United States Treasury Department, which would have notified the IRS of defendant PEAKE's banking activities.

      q.     For the tax years 2001 through and including 2007, defendant PEAKE caused PMG Inc. to fail to report his and his wife's employment wages to the IRS. He further caused PMG Inc. to fail to collect and pay over Social Security, Medicare and income tax withholdings

from these employment wages.

r.      From on or about April 15, 2001 through on or about October 15, 2008, despite

earning substantial income, defendant PEAKE failed to file U.S. Individual Income Tax Returns

("Forms 1040") with the IRS for the calendar years 2000, 2001, 2002, 2003, 2004, 2005, 2006,

and 2007 and to pay any income taxes he owed.

All in violation of Title 26, United States Code, Section 7212(a).


## COUNT TWO
### Aiding and Assisting Preparation and Presentment
### False Corporate Return - 2001

9.      Paragraphs 1, 4 through 8 of this Indictment are hereby realleged and incorporated as if

fully set forth herein.

10.     From on or about January 1, 2002 through on or about October 29, 2003, in the District of

Columbia and elsewhere, defendant PEAKE did willfully aid and assist in, and procure, counsel,

and advise the preparation and presentation to the IRS, of a U.S. Corporate Income Tax Return

for an S Corporation (Form 1120S) for PMG, Inc. for the calendar year 2001, which was false

and fraudulent as to a material matter in that it, among others, reported gross receipts on Line 1a

in the amount of $1,186,136, whereas, as defendant PEAKE then and there well knew and

believed, PMG, Inc. had received gross receipts in excess of that amount.

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT THREE
### Aiding and Assisting Preparation and Presentment
### False Corporate Return - 2002

11.     Paragraphs 1, 4 through 8 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

12.     From on or about January 1, 2002 through on or about December 13, 2004, in the District of Columbia and elsewhere, defendant PEAKE did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of a U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the calendar year 2002, which was false and fraudulent as to a material matter in that it, among others, reported gross receipts on Line 1a in the amount of $2,280,162.50, whereas, as defendant PEAKE then and there well knew and believed, PMG, Inc. had received gross receipts in excess of that amount.

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT FOUR
### Aiding and Assisting Preparation and Presentment
### False Corporate Return - 2003

13.     Paragraphs 1, 4 through 8 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

14.     From on or about January 1, 2003 through on or about November 13, 2006, in the District of Columbia and elsewhere, defendant PEAKE did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of a U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the calendar year 2003, which was false and fraudulent as to a material matter in that it, among others, reported gross receipts on

Line 1a in the amount of $1,266,321, whereas, as defendant PEAKE then and there well knew and believed, PMG, Inc. had received gross receipts in excess of that amount.

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT FIVE
### Aiding and Assisting Preparation and Presentment
### False Corporate Return - 2004

15.     Paragraphs 1, 4 through 8 of this Indictment are hereby realleged and incorporated as if set forth fully herein.

16.     From on or about January 1, 2004 through on or about November 13, 2006, in the District of Columbia and elsewhere, defendant PEAKE did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the IRS, of a U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the calendar year 2004, which was false and fraudulent as to a material matter in that it, among others, reported gross receipts on Line 1a in the amount of $1,746,085, whereas, as defendant PEAKE then and there well knew and believed, PMG, Inc. had received gross receipts in excess of that amount.

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT SIX
### Aiding and Assisting Preparation and Presentment
### False Corporate Return - 2005

17.     Paragraphs 1, 4 through 8 of this Indictment are hereby realleged and incorporated as if set forth fully herein.

18.     From on or about January 1, 2005 through on or about November 13, 2006, in the District

of Columbia and elsewhere, defendant PEAKE did willfully aid and assist in, and procure,

counsel, and advise the preparation and presentation to the IRS, of a U.S. Corporate Income Tax

Returns for an S Corporation (Form 1120S) for PMG, Inc. for the calendar year 2005, which was

false and fraudulent as to a material matter in that it, among others, reported gross receipts on

Line 1a in the amount of $1,298,435, whereas, as defendant PEAKE then and there well knew

and believed, PMG, Inc. had received gross receipts in excess of that amount.

All in violation of Title 26, United States Code, Section 7206(2).


### COUNT SEVEN
### U.S. Income Tax Evasion - 2001

19.     Paragraphs 1, 4 through 8 and 10 of this Indictment are hereby realleged and incorporated

as if fully set forth herein.

20.     From in or about January 1, 2001 through in or about October 29, 2003 in the District of

Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat a large part

of the income tax due and owing by him to the United States for the tax year 2001 by failing to

make an income tax return on or before April 15, 2002, as required by law, and by:

   a.      conducting his financial affairs in a manner to avoid making records that are

ordinary and customary;

   b.      filing or causing to be filed a false U.S. Corporate Income Tax Return for an S

Corporation (Form 1120S) for PMG, Inc. for the tax year 2001;

   c.      diverting business income from PMG, Inc. to himself;

   d.      utilizing commercial bank accounts he controlled in a nominee name;

11

e.      misappropriating proceeds from a commercial line of credit for his personal benefit;

f.      paying personal expenditures with business receipts; and

g.      using U.S. currency to pay personal and business expenses.

All in violation of Title 26, United States Code, Section 7201.

## COUNT EIGHT
### U.S. Income Tax Evasion - 2002

21.     Paragraphs 1, 4 through 8 and 12 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

22.     From in or about January 1, 2002 through in order about December 13, 2004, in the District of Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States for the tax year 2002 by failing to make an income tax return on or before April 15, 2003, as required by law, and by:

a.      conducting his financial affairs in a manner to avoid making records that are ordinary and customary;

b.      filing or causing to be filed a false U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the tax year 2002;

c.      diverting business income from PMG, Inc. to himself;

d.      utilizing commercial bank accounts he controlled in a nominee name;

e.      misappropriating proceeds from a commercial line of credit for his and his mother's personal benefit;

12

f.       paying personal expenditures with business receipts;

g.       withdrawing and causing the withdrawal of U.S. currency in amounts less than $10,000; and

h.       using U.S. currency to pay personal and business expenses.

All in violation of Title 26, United States Code, Section 7201.

## COUNT NINE
### U.S. Income Tax Evasion - 2003

23.      Paragraphs 1, 4 through 8 and 14 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

24.      From in or about January 1, 2003 through on or about November 13, 2006, in the District of Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States for the tax year 2003 by failing to make an income tax return on or before October 15, 2004, as required by law, and by:

a.       conducting his financial affairs in a manner to avoid making records that are ordinary and customary;

b.       filing or causing to be filed a false U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the tax year 2003;

c.       diverting business income from PMG, Inc. to himself and a nominee;

d.       utilizing commercial bank accounts he controlled in a nominee name;

e.       paying himself out of the commercial bank accounts he controlled in a nominee name;

13

  f.  misappropriating proceeds from a commercial line of credit for his personal

benefit;

  g.  paying personal expenditures with business receipts;

  h.  withdrawing and causing the withdrawal of U.S. currency in amounts less than

$10,000; and

  i.  using U.S. currency to pay personal and business expenses.

  All in violation of Title 26, United States Code, Section 7201.


**COUNT TEN**
**U.S. Income Tax Evasion - 2004**

25.  Paragraphs 1, 4 through 8 and 16 of this Indictment are hereby realleged and incorporated

as if fully set forth herein.

26.  From in or about January 1, 2004 through on or about November 13, 2006, in the District

of Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat a large

part of the income tax due and owing by him to the United States for the tax year 2004 by failing

to make an income tax return on or before October 17, 2005, as required by law, and by:

  a.  conducting his financial affairs in a manner to avoid making records that are

ordinary and customary;

  b.  filing or causing to be filed a false U.S. Corporate Income Tax Return for an S

Corporation (Form 1120S) for PMG, Inc. for the tax year 2004;

  c.  diverting business income from PMG, Inc. to himself or a nominee;

  d.  utilizing commercial bank accounts he controlled in a nominee name;

14

e.      paying himself and his wife out of commercial bank accounts he controlled in a nominee name;

f.      misappropriating proceeds from a commercial line of credit for his personal benefit;

g.      paying personal expenditures with business receipts;

h.      withdrawing and causing the withdrawal of U.S. currency in amounts less than $10,000; and

i.      using U.S. currency to pay personal and business expenses.

All in violation of Title 26, United States Code, Section 7201.


## COUNT ELEVEN
### U.S. Income Tax Evasion - 2005

27.    Paragraphs 1, 4 through 8 and 18 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

28.    From in or about January 1, 2005 through on or about November 13, 2006, in the District of Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States for the tax year 2005 by failing to make an income tax return on or before October 16, 2006, as required by law, and by:

a.      conducting his financial affairs in a manner to avoid making records that are ordinary and customary;

b.      filing or causing to be filed a false U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the tax year 2005;

     c.       diverting business income from PMG, Inc. to himself and a nominee;

     d.       utilizing commercial bank accounts he controlled in a nominee name;

     e.       paying himself and his wife out of commercial bank accounts he controlled in a nominee name;

     f.       paying personal expenditures with business receipts;

     g.       withdrawing and causing the withdrawal of U.S. currency in amounts less than $10,000; and

     h.       using U.S. currency to pay personal and business expenses.

All in violation of Title 26, United States Code, Section 7201.

## COUNT TWELVE
### U.S. Income Tax Evasion - 2006

29.     Paragraphs 1, 4 through 8 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

30     From in or about January 1, 2006 through on or about December 4, 2006, in the District of Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States for the tax year 2006 by failing to make an income tax return on or before October 15, 2007, as required by law, and by:

     a.       failing to file a U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the tax year 2006;

     b.       conducting his financial affairs in a manner to avoid making records that are ordinary and customary;

c.    diverting business income from PMG, Inc. to himself and a nominee;

d.    utilizing commercial bank accounts he controlled in a nominee name;

e.    paying himself and his wife out of commercial bank accounts he controlled in a nominee name;

f.    withdrawing and causing the withdrawal of U.S. currency in amounts less than $10,000; and

g.    using U.S. currency to pay personal and business expenses.

All in violation of Title 26, United States Code, Section 7201.

### COUNT THIRTEEN
### U.S. Income Tax Evasion - 2007

31.    Paragraphs 1, 4 through 8 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

32.    From in or about January 1, 2007 through in order about December 21, 2007, in the District of Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States for the tax year 2007 by failing to make an income tax return on or before October 15, 2008, as required by law, and by:

a.    failing to file a U.S. Corporate Income Tax Return for an S Corporation (Form 1120S) for PMG, Inc. for the tax year 2007;

b.    conducting his financial affairs in a manner to avoid making records that are ordinary and customary;

c.    diverting business income from PMG, Inc. to himself and a nominee;

d.    utilizing commercial bank accounts he controlled in a nominee name;

17

      e.      paying himself and his wife out of commercial bank accounts he controlled in a nominee name;

      f.      paying personal expenditures with business receipts; and

      g.      using U.S. currency to pay personal and business expenses.

      All in violation of Title 26, United States Code, Section 7201.

## COUNT FOURTEEN
### D.C. Income Tax Evasion - 2001 through 2007

33.      Paragraphs 4 through 8 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

34.      PMG, Inc. maintained an office at 700 13th Street, N.W., Washington, D.C. where it conducted business. Annually, PMG, Inc. was required to file a Corporation Franchise Tax Return (Form D-20). Unlike the federal statutes and regulations, the District of Columbia does not recognize S corporations flow through entities. As such, PMG, Inc. was required to pay franchise taxes based upon the total amount of taxable District income.

35.      From on or about October 27, 2003 through on or about September 15, 2008, in the District of Columbia and elsewhere, defendant PEAKE did willfully attempt to evade and defeat more than $10,000 of franchise taxes due and owing by PMG, Inc. to the District of Columbia for the tax years 2001 through and including 2007 by, among other ways:

      a.      filing or causing to be filed false Corporation Franchise Tax returns (Forms D-20) for PMG, Inc. for the tax years 2001, 2003, 2004 and 2005;

      b.      filing or causing to be filed a false Unincorporated Business Franchise Tax return (Form D-30) for PMG, Inc. for the tax year 2002;

18

    c.       failing to file a corporate franchise return (Form D-20) for PMG, Inc. for the tax years 2006 and 2007;

    d       conducting his financial affairs in a manner to avoid making business records that are ordinary and customary;

    e.       diverting business income from PMG, Inc. to himself and a nominee;

    f.       utilizing commercial bank accounts  he controlled in a nominee name; and

    g.       using U.S. currency to pay business expenses.

All in violation of Title 47, D.C. Code, Section 4101(a).

## COUNT FIFTEEN
### Conspiracy to Commit Bank and Wire Fraud

36.    Paragraphs 1 through 3 and 8(r) of this Indictment are hereby realleged and incorporated as if fully set forth herein.

37.    Washington Mutual Bank, F.A. ("Washington Mutual") and Freemont Investment and Loan ("Freemont") were financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation.

38.    Option One Mortgage ("Option One") was a non-financial lender.

39.    Washington Mutual, Freemont and Option One (at times referred to as "the lenders") were in the business of providing residential loans.  Lenders required an individual who applied for a residential mortgage to undergo a credit analysis to determine the borrower's ability and willingness to repay the mortgage loan.

40.    The lenders often dealt with mortgage brokers, who worked directly with potential

borrowers.  Mortgage brokers collected loan application documents from prospective borrowers and searched for lenders willing to make the loans.  The loan documents included the Uniform Residential Loan Application, borrower's credit report, and income verification forms, such as income tax returns, wage statements, and pay stubs.

41.     Bank of Commerce was a mortgage brokerage company located in Oklahoma City, Oklahoma.  W.H. worked as an independent contractor for Trian LLC, a company hired by the Bank of Commerce to solicit borrowers who, among other things, were seeking to refinance residential properties.

42.     J.F. was hired by Trian LLC to process borrowers' loan application documents collected by W.H. and others.  J.F. worked out of her residence in Frederick, Maryland.

43.     The loan documents were forwarded to the lenders for review to determine whether the loans should be approved.   The lenders relied upon the accuracy and truthfulness of the information in the loan application and supporting documentation in determining whether to make a mortgage loan.

44.     Once the lenders agreed to loan money to the borrower, the transactions were consummated at a real estate closing, conducted by a settlement agent.  The lenders often required the borrowers to sign another Uniform Residential Loan Application before the funds are disbursed.

### The Conspiracy

45.     From on or about April 5, 2000, and continuing thereafter until on or about April 9, 2009, in the District of Columbia and elsewhere, defendant PEAKE, defendant MCCORMICK, and others, known and unknown to the grand jury, did unlawfully, willfully and knowingly conspire,

combine, confederate and agree with other persons both known and unknown to the grand jury to

commit offenses against the United States, namely:

    a.      bank fraud, accomplished by their engaging in a scheme to defraud and
            obtain money and property from financial institutions by means of false
            and fraudulent pretenses, representations, and promises, in violation of 18
            U.S.C. §§ 1344 and 2; and

    b.      wire fraud, accomplished by their engaging in a scheme to defraud and to
            obtain money and property by means of false and fraudulent pretenses,
            representations, and promises and for the purpose of executing, and
            attempting to execute the scheme to defraud, willfully causing to be
            transmitted wire communications in interstate commerce, in violation of
            18 U.S.C. §§ 1343 and 2.

### Goal of the Conspiracy

46.     It was a goal of the conspiracy that defendants PEAKE and MCCORMICK and their co-

conspirators would defraud mortgage lenders of money by submitting false information and

fraudulent documentation to support defendant PEAKE's self employment status, gross monthly

self-employment income and rental income.  Based upon these false and fraudulent

representations, the lenders loaned defendant PEAKE approximately $2,801,900.

### Manner and Means

47.     The manner and means by which defendants PEAKE and MCCORMICK and their co-

conspirators sought to accomplish the purpose and objects of the conspiracy included, among

others, providing the following:

    a.      false information about defendant PEAKE's employment;

    b.      false information about defendant PEAKE's assets;

    c.      fabricated letters by a certified public accountant that falsely represented that

defendant PEAKE had filed federal income tax returns, reporting self employment wages; and

d.      false information about the rental income defendant PEAKE received.

## Overt Acts

### Original Finance of Firestone

48.     On or about April 5, 2000, defendant PEAKE signed an Uniform Residential Loan

Application, seeking financing to purchase 418 Firestone Drive, Silver Spring, Maryland

(hereinafter referred to as "Firestone"), in which he falsely represented to Washington Mutual

that:

a.      he earned $17,500 per month in gross income from his employment with Peake

Construction;

b.      his personal assets included $160,000 in a BB&T Savings account; and

c.      he was not delinquent or in default on any federal debt.

49.     On or about April 12, 2000, defendant MCCORMICK faxed a letter from the District of

Columbia to Washington Mutual in the State of Maryland, regarding defendant PEAKE's

outstanding debt to Vistana Development, a time share in Orlando, Florida.

50.     On or about April 25, 2000, defendant PEAKE caused AGENT to fax a letter from the

District of Columbia to Washington Mutual in the State of Maryland, providing identifying and

financial information for Peake Construction.

51.     On or about April 29, 2000, defendant PEAKE attended a real estate closing to purchase

Firestone for $881,203.  Based upon defendant PEAKE's representations, Washington Mutual

loaned defendant PEAKE approximately $660,900 to consummate the purchase.

### First Refinance - Firestone

52.     In or about July 2006, defendant PEAKE approached W.H. to refinance Firestone.

22

Defendant PEAKE told W.H. that defendant MCCORMICK would provide W.H. with any information or supporting documents that were required to obtain the loan.

53.     On or about July 26, 2006, W.H. emailed a copy of defendant PEAKE's credit report from the State of Maryland to defendant MCCORMICK in the District of Columbia, which defendant MCCORMICK forwarded via email to defendant PEAKE.

54.     On or about August 4, 2006, defendant PEAKE paid W.H. for the credit report with a business check, in the amount of $975.

55.     On or about August 11, 2006, W.H. requested from defendant MCCORMICK, via an email from the State of Maryland to the District of Columbia, defendant PEAKE's income tax returns for the 2004 and 2005 calendar years.

56.     On or about August 23, 2006, defendant MCCORMICK caused defendant PEAKE's wife to fax from the State of Maryland to him, in the District of Columbia  a handwritten document that contained her and her children's dates of birth and social security numbers.

57.     On or about August 24, 2006, defendant MCCORMICK faxed a signed U.S. Individual Income Tax Return for the calendar year 2005, for defendant PEAKE and his wife, from the District of Columbia to W.H. in the State of Maryland.

58.     On or about August 25, 2006, defendant MCCORMICK faxed a signed U.S. Individual Income Tax Return for the calendar year 2004, for defendant PEAKE and his wife from the District of Columbia to W.H. in the State of Maryland.

59.     On or about August 31, 2006, defendant MCCORMICK faxed fraudulent Wage and Tax Statements (Forms W-2), purportedly issued to defendant PEAKE for the calendar years 2004 and 2005, from the District of Columbia to W.H. in the State of Maryland.

60.    Between on or about September 28, 2006 and on or about October 6, 2006, defendant

MCCORMICK and W.H. communicated via email and telephone between the District of

Columbia and the State of Maryland regarding the preparation of a letter from a certified public

accountant ("CPA") to verify defendant PEAKE's self employment status with PMG, Inc.

61.    On or about October 6, 2006, W.H. completed the fabricated CPA letter on the letterhead

of J.A.B., a licensed CPA, by photocopying J.A.B.'s signature and affixing J.A.B.'s CPA license

number. The fabricated letter was forwarded to Freemont.

62.    On or about October 20, 2006, defendant PEAKE and his wife attended a real estate

closing conducted by Alltech Title. Defendant PEAKE signed a typed Uniform Residential Loan

Application, in which he falsely certified, among other things, that he was not delinquent or in

default on any federal debt. Based upon defendant PEAKE's representations, Freemont agreed to

refinance Firestone for $800,000.

63.    On or about October 26, 2006, defendant PEAKE caused Alltech Title to issue him a

check in the amount of $173,657.03.

### Refinance - Bald Hill

64.    On or about October 27, 2006, defendant MCCORMICK and W.H. communicated via

email between the District of Columbia and the State of Maryland regarding defendant PEAKE's

intention to refinance another residential property defendant PEAKE owned at 10107 Bald Hill

Road, Bowie, Maryland (hereinafter referred to as "Bald Hill").

65.    On or about December 19, 2006, defendant MCCORMICK faxed a signed Uniform

Residential Loan Application to W.H. or J.F. in the State of Maryland. The application

represented that defendant PEAKE's monthly income included $35,000 from PMG, Inc. and

$2,200 from Bald Hill's tenant.  Again, defendant PEAKE falsely claimed that he was not delinquent or in default on any federal debt.

66.     W.H. provided J.F. with another fabricated CPA letter, purportedly written by J.A.B. W.H. updated the letter to December 12, 2006 and forged J.A.B.'s signature.

67.     On or about January 11, 2007, defendant MCCORMICK reimbursed W.H. for the cost of the Bald Hill appraisal by writing W.H. a personal check in the amount of $525.

68.     On or about January 16, 2007, W.H. prepared a fictitious lease agreement between defendant PEAKE and non-existent tenant.  According to the terms of the lease agreement, the tenant was obligated to pay defendant PEAKE $1,800 per month to rent Bald Hill.

69.     On or about January 23, 2007, defendant PEAKE and his wife attended a real estate closing conducted by Alltech Title.  Defendant PEAKE signed a typed Uniform Residential Loan Application, in which he falsely certified, among other things, that he was not delinquent or in default on any federal debt.  Based upon defendant PEAKE's representations, Freemont agreed to refinance Bald Hill for $375,000.

70.     On or about January 26, 2007, defendant PEAKE caused Alltech Title to wire transfer $233,418.50 from Alliance Bank, in Fairfax, Virginia to defendant PEAKE's personal savings account at Chevy Chase Bank, in Laurel, Maryland.

### Second Refinance - Firestone

71.     On or about June 7, 2007, W.H. emailed a Uniform Residential Loan Application and related documents to defendant MCCORMICK in the District of Columbia, regarding defendant PEAKE's intent to refinance Firestone.

72.     On or about June 12, 2007, W.H. changed the fabricated CPA letter to reflect that JAB

had reviewed defendant PEAKE's income tax returns for the calendar years 2003 through 2006 and changed the date the letter was purportedly written to June 12, 2007. W.H. again photocopied J.A.B.'s signature onto the fabricated letter and caused it to be forwarded to Option One.

73.     On or about June 28, 2007, defendant MCCORMICK faxed defendant PEAKE's signed Uniform Residential Loan Application and other related loan documents to W.H. or J.F. in the State of Maryland. These documents were subsequently forwarded to Option One.

74.     On or about July 17, 2007, defendant PEAKE and his wife attended a real estate closing conducted by Alltech Title. Defendant PEAKE signed a corrected Uniform Residential Loan Application, in which he certified, among other things, that his gross monthly income from PMG, Inc. was $35,000, his monthly rental receipts from Bald Hill was $4,000 and he was not delinquent or in default on any federal debt. Based upon defendant PEAKE's representations, Option One agreed to refinance Firestone for $966,000.

75.     On or about July 24, 2007, defendant PEAKE caused Alltech Title to wire transfer $135,127.57 from Alliance Bank, in Fairfax, Virginia to defendant PEAKE's personal savings account at Chevy Chase Bank, in Laurel, Maryland.

All in violation of Title 18, United States Code, Section 371.

### COUNT SIXTEEN
### Bank Fraud

76.     From in or about July 2006, until on or about January 26, 2007, within the District of Columbia and elsewhere, defendant PEAKE, defendant MCCORMICK and others devised and

intended to devise a scheme and artifice to defraud a financial institution, that is Freemont, to obtain approximately $1,175,000 in loan proceeds by means of materially false and fraudulent pretenses, representations, and promises.

77.     Paragraphs 3, 37, 39 through 44, and 52 through 70 of this Indictment are hereby realleged, and contain the description of the above mentioned scheme.

        All in violation of Title 18, United States Code, Sections 1344 and 2.


                        **COUNT SEVENTEEN AND EIGHTEEN**
                                **Wire Fraud**

78.     From on or about June 7, 2007 to on or about July 24, 2007, within the District of Columbia and elsewhere, defendant PEAKE, defendant MCCORMICK and others devised and intended to devise a scheme and artifice to defraud Option One to obtain approximately $966,000 in loan proceeds by means of materially false and fraudulent pretenses, representations, and promises.

79.     Paragraphs 3, 38 through 44, 71 through 75 of this Indictment are hereby realleged and contain the description of the above mentioned scheme.

80.     On or about each of the dates set forth below, in the District of Columbia and elsewhere, defendant PEAKE and defendant MCCORMICK, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count,

each transmission constituting a separate count:

| COUNT | APPROXIMATE DATES | DESCRIPTION OF WIRE |
| --- | --- | --- |
| SEVENTEEN | ·June 27, 2007 | W.H. email from Maryland to defendant MCCORMICK in the District of Columbia with attached loan application and related documents |
| EIGHTEEN | June 28, 2007 | Defendant MCCORMICK faxed signed loan Application and related loan documents from the District of Columbia to Maryland |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT NINETEEN
### Aggravated Identity Theft

81.     Paragraphs 3, 37 through 47, 53 through 71 of this Indictment are hereby realleged, and incorporated as if fully set forth herein.

82.     From on or about September 28, 2006 through on or about July 17, 2007, in the District of Columbia and elsewhere, defendant PEAKE and defendant MCCORMICK knowingly caused the transfer, possession, and use, without lawful authority, a means of identification of another person, that is J.A.B.'s name, business name, CPA license number, and signature, during and in relation to Bank Fraud and Wire Fraud, in violation of Title 18, United States Code, Sections 1343 and 1344.

All in violation of Title 18, United States Code, Sections 1028A and 2.

## COUNT TWENTY
### Obstruction of Justice

83.     From on or about the February 12, 2008 through on or about November 17, 2009, in the

District of Columbia and elsewhere, defendant MCCORMICK did corruptly influence, obstruct

and impede or endeavor to influence, obstruct and impede a federal grand jury in the District of

Columbia by, among other ways:

      a.     making false statements to the government;

      b.     testifying falsely before the grand jury and

      c.     failing to produce records as specifically requested through the issuance of two

grand jury subpoenas *duces tecum*.

      All in violation of Title 18, United States Code, Section 1503.

## FORFEITURE ALLEGATION

84.    The violations alleged in Counts Fifteen through Eighteen of this Indictment, Conspiracy to Commit Bank and Wire Fraud, Bank Fraud, and Wire Fraud, are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(2)(A).

85.    As a result of the offenses alleged in Counts Fifteen through Nineteen of this Indictment, the defendants in this Indictment shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the alleged offenses, including, but not limited to:

> Money Judgment
>
> $2,801,900, which represents a sum of money equal to an amount of property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the offenses alleged in Counts Fifteen through Nineteen.

By virtue of the commission of the felony offenses charged in Counts Fifteen through Eighteen of this Indictment, any and all interest that the defendants have in the property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offenses is vested in the United States and hereby forfeited to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A).

86.    If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A), as a result of any act or omission of the defendants:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third person;

30

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property that cannot be subdivided without

difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section

982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek

forfeiture of any other property of said defendants up to the value of said property listed above as

being subject to forfeiture.

All in violation of Title 18, United States Code, Section, 982(a)(2)(A)).

A TRUE BILL:

FOREPERSON

*Ronald C. Machen, Jr. /DbC*

ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA